UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUFINO FERNANDO NAVARRO, ISMAEL MEJIA and, JUAN ROSAS, on behalf of themselves, individually, and on behalf of all others similarly-situated,<br><br>                              Plaintiffs,<br><br>        -against-<br><br>ADAMBA IMPORTS INTERNATIONAL, INC.,<br><br>                              Defendant. | **Index No.: 21-cv-6342**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION** |

Plaintiffs Rufino Fernando Navarro ("Navarro"), Ismael Mejia ("Mejia") and Juan Rosas ("Rosas") (collectively "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated, ("FLSA Plaintiffs"), by and through their attorneys, JOSEPH & NORINSBERG, LLC, as and for their Complaint against Adamba Imports International, Inc. ("Adamba Imports" or "Defendant"), allege upon knowledge as to themsleves and their own actions, and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1.        Plaintiffs bring this action for Defendant's violations of: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL") §§ 160, 650 *et seq.*, and New York Codes R. & Regs ("NYCRR") Tit. 12, § 142-2.2; (iii) the requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information under the NYLL § 195(3), as codified in the New York Wage Theft Prevention Act (the "WTPA"); (iv) the NYLL's and WTPA's requirement that employers furnish employees with a wage notice at hire containing

specific categories of accurate information, NYLL § 195(1); (v) the NYLL's requirement that employers pay their employees an additional one hour's pay at the minimum wage rate if their employees' spread of hours exceeds ten in a workday, NYLL § 652; 12 NYCCRR § 142-2.4 (vi) the anti-retaliation provisions of the FLSA as amended by the Families First Coronavirus Response Act ("FFCRA"), Pub. L. 116-127, codified at 28 C.F.R. § 826.150; (vii) the anti-discrimination provisions of the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code § 8-101 *et seq.*; and (viii) any other cause(s) of action that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.      Defendant owns and operates a food, produce and beverage warehouse facility that services local supermarkets and the food service industry. Defendant employed Plaintiffs as warehouse clerks at their facility located in Brooklyn, New York, wherein their job responsibilities included taking inventory, organizing and stocking food, produce and beverage products on shelves and in refrigerators, and preparing sale orders for shipping.

3.      Defendant refused to pay Plaintiffs overtime wages in violation of state law. As discussed below, Defendant regularly required Plaintiffs to work approximately between fifty (50) hours to fifty seven and one-half (57.5) hours per week; however, Defendant refused to compensate Plaintiffs, *inter alia*, with statutorily required overtime pay of one and one-half time their regular rates of pay. Furthermore, Defendant deliberately hid its unlawful compensation practices by failing to furnish Plaintiffs with accurate and/or complete wage statements as required under the NYLL and NYCCRR.

4.      Moreover, Defendant denied Plaintiffs legally mandated spread-of-hours pay for hours worked in excess of ten (10) hours per day.

5.      Defendant paid and treated all of its hourly, non-managerial employees in the same manner regardless of job title or job duties by uniformly refusing to pay them overtime compensation when their hours exceeded forty in a week and by refusing to pay them spread-of-hours pay when their hours exceeded ten in a day.

6.      Plaintiffs therefore bring this lawsuit against Defendant pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendant's willful violations of the FLSA.

7.      Plaintiffs bring their NYLL and NYCRR claims on behalf of themselves and on behalf of any FLSA Plaintiffs who opt into this action.

8.      In addition, Defendant engaged in a pattern or practice of retaliation and disability discrimination. Defendant forced all employees, including Plaintiffs, to report to work daily despite the heightened risk of exposure to and contraction of the COVID-19 novel coronavirus. Defendant failed to provide sick leave benefits or afford employees a fourteen (14) day quarantine period if they contracted the coronavirus.

9.      In an attempt to circumvent paying sick leave to employees and avoid following United States Centers for Disease Control and Prevention ("CDC") recommended quarantine guidelines, Defendant willfully and unlawfully discriminated against Plaintiffs by terminating their employment for either exhibiting symptoms of the coronavirus or taking time off from work to recover from the coronavirus or symptoms thereof.

10.      Accordingly, Plaintiffs bring this action to remedy Defendant's violations of the NYLL, NYCRR, WTPA, FFCRA, and NYCHRL.

## JURISDICTION AND VENUE

11.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

12.     Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2), as one or more of the Defendants reside within this judicial district, and as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

## PARTIES

### *Plaintiff Rufino Fernando Navarro ("Mr. Navarro")*

13.     Plaintiff, Mr. Navarro, is an individual, who at all times relevant to this Complaint, is and has been a resident of the County of Kings, City of Brooklyn and State of New York.

14.     Plaintiff was employed by Defendant as a warehouse clerk at Defendant's food and beverage warehouse facility located at 585 Meserole Street in the County of Kings, in the City and State of New York.

15.     At all relevant times herein, Plaintiff is a "person" and was an "employee" of Defendant within the meaning of the NYLL, NYCCRR, NYWTPA, FFCRA and NYCHRL.

### *Plaintiff Ismael Mejia ("Mr. Mejia")*

16.     Plaintiff, Mr. Mejia, is an individual, who at all times relevant to this Complaint, is and has been a resident of the County of Kings, in the City and State of New York.

17.     Plaintiff was employed by Defendant as a warehouse clerk at Defendant's food and beverage warehouse facility located at 585 Meserole Street in the County of Kings, in the City and State of New York.

18.     At all relevant times herein, Plaintiff is a "person" and was an "employee" of Defendant within the meaning of the NYLL, NYCCRR, NYWTPA, FFCRA and NYCHRL.

***Plaintiff Juan Rosas ("Mr. Rosas")***

19.     Plaintiff, Mr. Rosas, is an individual, who at all times relevant to this Complaint, is and has been a resident of the County of Kings, in the City and State of New York.

20.     Plaintiff was employed by Defendant as a warehouse clerk at Defendant's food and beverage warehouse facility located at 585 Meserole Street in the County of Kings, in the City and State of New York.

21.     At all relevant times herein, Plaintiff is a "person" and was an "employee" of Defendant within the meaning of the NYLL, NYCCRR, and WTPA.

***Defendant Adamba Imports International, Inc. ("Adamba Imports")***

22.     At all relevant times herein, Defendant Adamba Imports, was and is a domestic business corporation, with its principal place of business located at 585 Meserole Street in the County of Kings, in the City and State of New York.

23.     Defendant owns, operates and manages a food, produce and beverage warehouse facility servicing local supermarkets and the food service industry.

24.     Plaintiffs' paystubs indicate that Adamba Imports International, Inc. is the entity that issued compensation to Plaintiffs during the relevant time period.

25.     At all relevant times herein, Defendant exercised control over the terms and conditions of Plaintiffs' employment, in that Defendant had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment. Accordingly, Defendant is the

"employer" of Plaintiffs within the meaning of the NYLL, NYCCRR, NYWTPA, FFCRA and NYCHRL.

## COLLECTIVE ACTION ALLEGATIONS

26.     Plaintiffs seek to bring this suit to recover from Defendant unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on his own behalf, as well as on behalf of those in the following collective:

> Current and former hourly, non-managerial employees, who during the applicable FLSA limitations period, performed any work for any of the Defendants, and who consent to file a claim to recover damages for: (1) overtime compensation that is legally due to them; and/or (2) liquidated damages that are legally due to them ("FLSA Plaintiffs").

27.     Defendant treated Plaintiffs and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

28.     At all relevant times, Defendant is and has been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet it purposefully and willfully chose and chooses not to do so.

29.     The precise number of FLSA Plaintiffs should be readily available from a review of the Defendant's personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

30.     Thus, all FLSA Plaintiffs are victims of Defendant's pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## INDIVIDUAL ALLEGATIONS

**Rufino Fernando Navarro**

31.     On or about October  2008, Defendant Adamba Imports hired Plaintiff, Mr. Navarro, as a warehouse clerk at their food and beverage warehouse facility in Brooklyn, NY.

32.     In his capacity as a warehouse clerk, Mr. Navarro's primary job duties included *inter alia*, taking inventory, organizing and stocking food, produce and beverage products on shelves and in refrigerators, preparing sale orders for shipping and regularly operating a forklift to move pallets containing inventory stock.

***Defendant Failed to Pay Plaintiff Wages at the Mandatory Statutory Rate for Overtime Hours Worked***

33.     Throughout his employment, Mr. Navarro's weekly schedule during the statutory period was typically set as follows – from Monday through Friday, Plaintiff would work from 7:00 a.m. to 5:00 p.m., without a break. In addition to his scheduled hours, Mr. Navarro frequently started work as early as 6:30 a.m. and continued working until 6:00 p.m. On average, Mr. Navarro worked between fifty (50) to fifty seven and one-half (57.5) hours per week. Accordingly, Mr. Navarro regularly worked more than forty (40) hours per week.

34.     Over the last six years of his employment with Defendant, prior to his termination on May 12, 2020, Defendant paid Mr. Navarro at the following rates of pay:

- From 2014 – 2015 his hourly rate was $13.00 per hour

- From 2016 – 2017 his hourly rate was $15.00 per hour

- From 2018 – 2020 his hourly rate was $17.00 per hour.

35.    Mr. Navarro was paid his flat hourly rate regardless of the amount of hours he worked each week. At all times relevant herein, to avoid paying Mr. Navarro overtime, Defendant split his compensation into two payments each pay period – (a) for the first forty (40) hours of his work week he received a check, and (b) for any hours worked over forty, he was paid in cash at his regular hourly rate; thus, assuring that his paystubs would not accurately reflect his hours and compensation. For example, if Mr. Navarro worked fifty seven and one-half (57.5) hours in a given week, he would be paid a total of $977.50 (57.5 hours at $17 per hour). Defendant would pay him with a check for $680.00, and then give him cash for the remaining $297.50.

36.    Despite working between ten (10) to seventeen and one-half (17.5) hours of overtime per week, Mr. Navarro was compensated at his regular hourly rate and at no point did Defendant ever compensate him at the statutorily mandated rate of one-and-a-half  (1.5x) times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

37.    By way of example only, during the week of July 9 through July 13, 2018, Defendant required Plaintiff Navarro to work, and Plaintiff did in fact work 49.42 hours, according to the following schedule:

Monday, July 9, 2018:         From 6:32 a.m. to 3:58 p.m, for a total of 9.43 hours

Tuesday, July 10, 2018:       From 6:45 a.m. to 5:00 p.m. for a total of 10.25 hours

Wednesday, July 11, 2018:   From 6:37 a.m. to 5:01 p.m. for a total of 10.4 hours

Thursday, July 12, 2018:      From 6:33 a.m. to 4:58 p.m. for a total 10.42 hours

Friday, July 13, 2018:         From 6:34 a.m. to 3:29 p.m. for a total of 8.92 hours

Defendant never paid Plaintiff plaintiff overtime compensation for the 9.42 hours worked beyond forty that week.

38.    Defendant flagrantly violated the NYLL and NYCRR in other respects as well.

39.    For instance, Mr. Navarro was not compensated for the legally mandated spread-of-hours-pay for hours worked in excess of ten (10) hours a day, including for the days during the week of July 9 to July 13, 2018, as described above.

40.    In addition, on each occasion when Defendant paid Plaintiff Navarro, Defendant intentionally failed to provide Plaintiff Navarro with a wage statement that accurately listed, *inter alia*: his actual hours worked for that week and/or his straight and overtime rates of pay for all hours worked.

### ***Defendant's Discriminatory Practices***

41.    During the height of the COVID-19 pandemic, towards the end of April 2020 and early May 2020, many warehouse workers either contracted the COVID-19 novel coronavirus ("coronavirus") or started to exhibit symptoms. Despite the highly infectious nature of the coronavirus and its mass infection rate, Defendant required Mr. Navarro and his co-workers to continue working, regardless of whether they exhibited symptoms. Furthermore, Defendant failed to provide sick leave benefits or afford employees a fourteen (14) day quarantine period if they contracted the coronavirus.

42.    Even when employees confronted the general manager, a woman by the name Tamara (last name unknown), about their coronavirus symptoms, she instructed them to continue working and not to worry. Accordingly, all the warehouse employees, including Mr. Navarro, continued to work despite either having the coronavirus or symptoms of the coronavirus and business proceeded as usual.

43.    On or about May 12, 2020, Defendant unlawfully and discriminatorily terminated Mr. Navarro for showing up to work with coronavirus symptoms. Despite being told to report to work regardless of symptoms, Mr. Navarro was terminated by the warehouse manager, Miguel

Barecho, at the direction of Tamara, due to his notification to management that he was feeling sick.

44.    Like other employees, Mr. Navarro worried about getting sick or contracting the coronavirus because he feared that he would be fired as a result. Unfortunately, his fears came to fruition when he reported to work experiencing symptoms of the coronavirus and was unlawfully terminated.

45.    In order to circumvent having to pay sick leave to any employees, including Mr. Navarro, and avoid following CDC recommended quarantine guidelines, Defendant forced them to continue working throughout the pandemic and when an employee contracted the coronavirus or exhibited symptoms, the Defendant willfully engaged in discriminatory and unlawful conduct by terminating their employment.

**Ismael Mejia**

46.    On or about February 2019, Defendant Adamba Imports hired Plaintiff, Mr. Mejia as a warehouse clerk at their food and beverage warehouse facility in Brooklyn, NY.

47.    In his capacity as a warehouse clerk, Mr. Mejia's primary duties included *inter alia*, organizing and stocking food, produce and beverage products and preparing sale orders for shipping.

***Defendant Failed to Pay Plaintiff Wages at the Mandatory Statutory Rate for Overtime Hours Worked***

48.    Throughout his employment, Mr. Mejia's weekly schedule during the statutory period was typically set as follows – from Monday through Friday, Plaintiff would work from 7:00 a.m. to 5:00 p.m., without a break. On average, Mr. Mejia worked roughly fifty (50) hours per

week. Accordingly, Mr. Mejia regularly worked more than forty (40) hours per week, entitling him to statutorily mandated overtime pay.

49.    Over the last two years of his employment with Defendant, prior to his termination in July, 2020, Defendant paid Mr. Mejia at the following rates of pay:

- From February 2019 – May 2019 his hourly rate was $15.00 per hour

- From June 2019 – July 2020 his hourly rate was $17.00 per hour.

50.    Mr. Mejia was paid his flat hourly rate regardless of the amount of hours he worked each week. At all times relevant herein, to avoid paying Mr. Mejia overtime, Defendant split his compensation into two payments each pay period – (a) for the first forty (40) hours of his work week he received a check, and (b) for any hours worked over forty, he was paid in cash at his regular hourly rate; thus, assuring that his paystubs would not accurately reflect his hours and compensation. For example, if Mr. Mejia worked fifty (50) hours in a given week, he would be paid a total of $850.00 (50 hours at $17 per hour). Defendant would pay him with a check for $680.00, and then give him cash for the remaining $170.00.

51.    Despite working roughly ten (10) hours of overtime per week, Mr. Mejia was compensated at his regular hourly rate and at no point did Defendant ever compensate him at the statutorily mandated rate of one-and-a-half  (1.5x) times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

52.    Defendant flagrantly violated the NYLL and NYCCRR in other respects as well.

53.    In addition, on each occasion when Defendants paid Mr. Mejia, Defendant intentionally failed to provide him with a wage statement that accurately listed, *inter alia*: his actual hours worked for that week and/or his straight and overtime rates of pay for all hours worked.

54.     Moreover, Defendant did not provide Mr. Mejia with any wage notice at the time of his hire, let alone one that accurately contained, *inter alia*: Plaintiff's rate or rates of pay and basis thereof; whether he would be paid by the hour, salary, or in another manner; allowances, if any, claimed as part of the minimum wage, including tip or meal allowances; the regular payday designated by Defendant in accordance with the NYLL; the corporate name of Defendant; any "doing business as" names used by Defendant; the physical address of Defendant's main office or principal place of business, and a mailing address if different; and Defendant's telephone number.

### ***Defendant's Discriminatory Practices***

55.     During the height of the COVID-19 pandemic, towards the end of April 2020 and early May 2020, many warehouse workers either contracted the coronavirus or started to exhibit symptoms. Despite the highly infectious nature of the coronavirus and its mass infection rate, Defendant required Mr. Mejia and his co-workers to continue working, regardless of whether they exhibited symptoms. Furthermore, Defendant failed to provide sick leave benefits or afford employees a fourteen (14) day quarantine period if they contracted the coronavirus.

56.     Even when employees confronted the general manager, a woman by the name Tamara, about their coronavirus symptoms, she instructed them to continue working and not to worry. Accordingly, all the warehouse employees, including Mr. Mejia, continued to work despite either having the coronavirus or symptoms of the coronavirus and business proceeded as usual.

57.     In or about July 2020, Defendant unlawfully and discriminatorily terminated Mr. Mejia after he took off two days of work to recover from being sick. Like other employees, Mr. Mejia worried about getting sick or contracting the coronavirus because he feared that he would be fired as a result. In an effort to ward off any sickness, Mr. Mejia took off a few days to get

better. Unfortunately, his fears came to fruition when he attempted to return to work, at which point the Defendant unlawfully terminated him for taking these sick days.

58.    In order to circumvent having to pay sick leave to any employees, including Mr. Mejia, and avoid following CDC recommended quarantine guidelines, Defendant forced them to continue working throughout the pandemic and when an employee contracted the coronavirus or exhibited symptoms, the Defendant willfully engaged in discriminatory and unlawful conduct by terminating their employment.

**Juan Rosas**

59.    In or about September 2015, Defendant Adamba Imports hired Plaintiff, Mr. Rosas, as a warehouse clerk at their food and beverage warehouse facility in Brooklyn, NY. He worked in this position until Defendant terminated his employment in or around mid-October 2020.

60.    In his capacity as a warehouse clerk, Mr. Rosas's primary duties included *inter alia*, organizing and stocking food, produce and beverage products and preparing sale orders for shipping.

61.    Throughout his employment, Mr. Rosas's weekly schedule during the statutory period was typically set as follows – from Monday through Friday, Plaintiff would work from 7:00 a.m. to between 3:00 p.m. and 9:00 p.m., without a break. On average, Mr. Rosas worked roughly fifty-five (55) hours per week. Accordingly, Mr. Rosas regularly worked more than forty (40) hours per week, entitling him to statutorily mandated overtime pay.

62.    During the first two years of his employment, Defendant paid Mr. Rosas at the rate of $11.00 per hour. Thereafter, Defendant paid Mr. Rosas between $12.00 per hour and $15.00 per hour.

63.     Prior to the summer of 2020, Defendant paid Mr. Rosas his flat hourly rate regardless of the amount of hours he worked each week. At all times relevant herein, before the summer of 2020, to avoid paying Mr. Rosas overtime, Defendant split his compensation into two payments each pay period – (a) for the first forty (40) hours of his work week he received a check, and (b) for any hours worked over forty, he was paid in cash at his regular hourly rate; thus, assuring that his paystubs would not accurately reflect his hours and compensation. For example, in early 2020, if Mr. Rosas worked fifty-five (55) hours in a given week, he would be paid a total of $825.00 (50 hours at $15.00 per hour). Defendant would pay him with a check for $600.00, and then pay him cash for the remaining $225.00.

64.     Despite working an average of fifteen (15) hours of overtime per week, Mr. Rosas was compensated at his regular hourly rate and at no point did Defendant ever compensate him at the statutorily mandated rate of one-and-a-half (1.5x) times the regular rate of pay for each hour worked in excess of forty (40) hours per week.

65.     Defendant flagrantly violated the NYLL and NYCCRR in other respects as well.

66.     For instance, Mr. Rosas was not compensated for the legally mandated spread-of-hours-pay for hours worked in excess of ten (10) hours a day, including for the days described above where he would often work upwards of fourteen (14) hours in one shift.

67.     In addition, on each occasion when Defendant paid Mr. Rosas until in or around the summer of 2020, Defendant intentionally failed to provide him with a wage statement that accurately listed, *inter alia*: his actual hours worked for that week and/or his straight and overtime rates of pay for all hours worked.

68.     Moreover, Defendant did not provide Mr. Rosas with any wage notice at the time of his hire, let alone one that accurately contained, *inter alia*: Plaintiff's rate or rates of pay and

basis thereof; whether he would be paid by the hour, salary, or in another manner; allowances, if any, claimed as part of the minimum wage, including tip or meal allowances; the regular payday designated by Defendant in accordance with the NYLL; the corporate name of Defendant; any "doing business as" names used by Defendant; the physical address of Defendant's main office or principal place of business, and a mailing address if different; and Defendant's telephone number.

<u>**FIRST CLAIM FOR RELIEF AGAINST DEFENDANT**</u>
<u>*Unpaid Overtime under the FLSA*</u>

69.     Plaintiffs and FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

70.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

71.     As described above, Defendant is an "employer" within the meaning of the FLSA, while Plaintiffs and FLSA Plaintiffs are "employees" within the meaning of the FLSA.

72.     Plaintiffs and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendant failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

73.     Defendant willfully violated the FLSA.

74.     Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

75.     Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendant's violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
### *Unpaid Overtime under the NYLL and the NYCCRR*

76.     Plaintiffs and any FLSA Plaintiff who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

77.     N.Y. Lab. Law § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay, or one and one-half times the minimum wage rate, if greater, for all hours worked exceeding forty in a workweek.

78.     Defendant is an "employer" within the meaning of the NYLL and the NYCCRR, while Plaintiff and any FLSA Plaintiff who opts-into this action are "employees" within the meaning of the NYLL and the NYCCRR.

79.     Plaintiffs and any FLSA Plaintiff who opts-into this action worked in excess of forty hours in a workweek, yet Defendant failed to compensate them in accordance with the NYLL's and the NYCCRR's overtime provisions.

80.     Plaintiffs and any FLSA Plaintiff who opts-into this action are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their regular rate of pay, or one and one-half the minimum wage rate, if greater.

81.     Plaintiffs and any FLSA Plaintiff who opts-into this action are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendant's violations of the NYLL's and NYCCRR's overtime provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFNEDANT
### *Failure to Furnish Proper Wage Statements in Violation of the NYLL*

82.     Plaintiffs and any FLSA Plaintiff who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

83.     N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

84.     Defendant is an "employer" within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-into this action are "employees" within the meaning of the NYLL and the NYCRR.

85.     As described above, Defendant, on each payday, failed to furnish Plaintiffs and any FLSA Plaintiff who opts-into this action with accurate wage statements containing the criteria required under the NYLL.

86.     Pursuant to NYLL § 198(1-d), Defendant is liable to Plaintiffs and any FLSA Plaintiff who opts-into this action in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
### *Failure to Furnish Proper Wage Notice in Violation of the NYLL*

87.     Plaintiffs and any FLSA Plaintiff who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

88.     NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

89.     As described above, Defendant is an "employer" within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-into this action are "employees" within the meaning of the NYLL.

90.     As also described above, Defendant failed to furnish Plaintiffs and any FLSA Plaintiff who opts-into this action with any wage notice at hire, let alone one that accurately contained all of the criteria required under the NYLL.

91.     Pursuant to NYLL § 198(1-b), Defendant is liable to Plaintiffs and any FLSA Plaintiff who opts-into this action in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT
### *Violation of the NYLL's and the NYCCRR's Spread of Hours Requirement*

92.     Plaintiffs and any FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

93.     N.Y. Lab. Law § 652 and 12 NYCCRR § 142-2.5 provide that an employee shall receive one hour's pay at the minimum hourly wage rate for any day worked in which the spread of hours exceeds ten hours.

94.     As described above, Defendant is an "employer" within the meaning of the NYLL and NYCRR, while Plaintiffs and any FLSA Plaintiff who opts-into this action are employees within the meaning of the NYLL and NYCCRR.

95.     As also described above, Defendant failed to provide Plaintiffs and any FLSA Plaintiff who opts-into this action with spread of hours pay when their spread of hours exceeded ten for a particular workday.

96.     Plaintiffs and any FLSA Plaintiff who opts-into this action are entitled to this extra hour of pay, at the minimum wage rate, for all days worked in excess of ten hours.

97.     Plaintiffs and any FLSA Plaintiff who opts-into this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' failure to pay the required spread of hours pay.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation in Violation of the FFCRA*

98.     Plaintiffs Navarro and Mejia repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

99.     The FLSA, as amended by the FFCRA and as codified in 29 C.F.R. § 826.10, *et seq.*, mandates that employers must provide employees with paid sick leave of up to two weeks when, *inter alia*, the employee is experiencing symptoms of COVID-19, and prohibits employers from discharging or in any other manner discrimating against any employee because such employee has, *inter alia*, for exhibiting COVID-19 symptoms and/or requesting leave for same.

100.    As described above, Defendant is an "employer" within the meaning of the NYLL and NYCRR, while Plaintiffs Navarro and Mejia are "employees" within the meaning of the FLSA and the CFR.

101.    As also described above, after Plaintiffs Navarro and Mejia exhibited COVID-19 symptoms while working, Defendant violated the FFCRA by refusing to provide Plaintiffs with any paid time off, and by instead terminating their employment.

102.    Plaintiffs are entitled to lost wages, liquidated damages, compensatory and punitive damages, interest, and attorneys' fees for Defendant's violations of the FFCRA.

### SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Violations of the Anti-Discrimination Provisions under the NYCHRL*

103.    Plaintiff Navarro and Mejia repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

104.    The NYCHRL, N.Y. Admin. Code § 8-107(1), prohibits discrimination in the terms, conditions or privileges of employment with respect to an individual's actual or perceived disability.

105.    Plaintiffs Navarro and Mejia, as described above, were at all times qualified employees and persons with a disability as those terms are defined under the NYCHRL.

106.    Defendant forced all employees, including Plaintiffs, to report to work daily despite the heightened risk of exposure to and contraction of the coronavirus. In order to circumvent paying sick leave to employees and avoid following CDC recommended quarantine guidelines, Defendant engaged in a pattern or practice of discrimination by terminating employees who either exhibited symptoms of the coronavirus or took time off from work to recover from the coronavirus or symptoms thereof.

107.    As set forth above, Defendant discriminated against Plaintiffs Navarro and Mejia because of their actual or perceived disability.

108.    Plaintiffs suffered damages as a result of the Defendant's discriminatory actions, including compensatory damages, punitive damages, as well as costs and attorneys' fees.

## DEMAND FOR A JURY TRIAL

109.    Pursuant to FRCP 38(b), Plaintiffs and FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and FLSA Plaintiffs respectfully demand judgment against Defendant, Adamba Imports as follows:

A.    Preliminary and permanent injunctions against Defendant, and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with the

Defendant, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and compelling them to undergo appropriate training and certification sessions, assuring the Defendant's future compliance with the major legal mandates violated in this case;

B.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned and applicable laws as detailed herein;

C.    An order restraining Defendant from any retaliation against Plaintiffs and any FLSA Plaintiffs for participation in any form in this litigation;

D.    Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

E.    Designation of Plaintiffs and their counsel as collective action representatives under the FLSA;

F.    Granting judgment in favor of Plaintiffs against Defendant, and awarding the amount of unpaid overtime wages calculated at the rate of one-and-one-half (1.5x) times Plaintiffs' regular rate, multiplied by all hours that Plaintiffs worked in excess of the prescribed number of hours per week;

G.    Awarding liquidated damages to Plaintiffs in an amount equal to the amount of unpaid overtime wages found owing to Plaintiffs;

H.    All damages which Plaintiffs have sustained as a result of Defendant's conduct, including back pay, front pay, general and special damages for lost compensation and job benefits

they would have received but for Defendant's conduct, and for emotional distress, humiliation, embarrassment, pain, suffering and anguish;

I.      Front pay to Plaintiffs until such time as they can be placed in the same position they would have occupied but for Defendant's unlawful conduct.

J.      Exemplary and punitive damages in an amount commensurate with Defendant's ability and so as to deter future malicious, reckless and/or intentional conduct;

K.      An award to the Plaintiffs for costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, and expert witness fees;

L.      Pre-judgment and post-judgment interest, as provided by law; and

M.      Granting Plaintiffs and FLSA Plaintiffs such other and further relief as this Court finds necessary and proper.

Date:   New York, New York
        November 16, 2021

                                        Respectfully submitted,

                                        **JOSEPH & NORINSBERG, LLC**

                        By:     _____
                                        Michael R. Minkoff, Esq.
                                        Jon L. Norinsberg, Esq.
                                        110 East 59th Street, Suite 3200
                                        New York, New York 10022
                                        Tel.: (212) 227-5700
                                        Fax: (212) 656-1889
                                        *Attorneys for Plaintiffs and Putative*
                                        *Collective*