

**Joseph & Norinsberg LLC**
Fighting for Employee Justice

Tel (212) 227-5700
Fax (212) 656-1889
_____
www.employeejustice.com

Michael R. Minkoff, Esq.
Michael@employeejustice.com

Manhattan Office
110 East 59th Street, Suite 3200
New York, NY 10022

Queens Office
69-06 Grand Avenue, 3rd Floor
Maspeth, NY 11378

December 30, 2022

<u>Via ECF Only</u>
The Honorable Roanne L. Mann
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

      **Re:**     ***Navarro et al. v. Adamba Imports International, Inc.*, 1:21-cv-06342-RLM**

Dear Judge Mann:

      As the Court knows, we represent Plaintiffs Rufino Fernando Navarro, Ismael Mejia, Juan Rosas, Cortez Ormaza Renee Omar, Daniel Morales, Hugo Cazarez, And Bartlomiej Jamroga ("Plaintiffs") in the above-referenced action against their former employer Adamba Imports International, Inc. ("Defendant") ("Defendant," together with Plaintiffs, as "the Parties"), arising under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA") (collectively the "Claims"). As the Court also knows, the Parties have accepted the Court's mediator's proposal at the conclusion of the Parties' settlement conference held before Your Honor, and the Parties they have now reduced their settlement to a formal written agreement ("Agreement"), attached hereto as **<u>Exhibit A</u>**.[1]  We write now, on behalf of the Parties, to explain the terms of the Parties' settlement with respect to Plaintiffs' FLSA claims, and to seek approval of the settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

---

[1] All parties with the exception of Plaintiff Juan Rosas were able to sign the Agreement electronically. As a result, there is a slight delay in obtaining Plaintiff Rosas's signature due to technical difficulties. Plaintiffs will file a supplemental version of the Agreement that includes Mr. Rosas's signature page upon receipt, as soon as possible.

## I.    <u>Relevant Factual and Procedural History</u>

Defendant owns and operates a food, produce and beverage import and wholesale business, including a warehouse facility in Brooklyn, New York, that services supermarkets and the food service industry. Defendant employed Plaintiffs at various times over the last several years as warehouse clerks, with the exception of Plaintiff Morales who was employed as a driver's helper, at their facility located in Brooklyn, New York. Their primary job duties involved taking inventory, organizing and stocking food, produce and beverage products on shelves and in refrigerators, preparing sale orders for shipping and regularly operating a forklift to move pallets containing inventory stock. In addition, regarding Opt-in Plaintiff Morales, he was responsible for assisting with deliveries of products for Defendant to Defendant's customers.

Plaintiffs allege that Defendant failed to pay them overtime compensation and spread-of-hours pay whenever they worked over forty hours in a week or over ten hours in a day, respectively. Thus, on or around April 15, 2021, Plaintiffs Navarro and Mejia, through counsel, sent a pre-litigation demand letter to Defendant, seeking to negotiate a resolution of their claims seeking unpaid wages and damages. After Defendant responded through counsel, the Parties negotiated for approximately six months, reaching an impasse. Then, on November 16, 2021, Plaintiffs Navarro, Mejia, and Rosas commenced this matter by filing their action in this Court. In their complaint, Plaintiffs asserted claims for unpaid overtime wages under the FLSA and NYLL, as well as wages statement and wage notice claims under the New York Wage Theft Prevention Act ("WTPA"), NYLL §§ 195(1) and (3), and failure to pay spread-of-hours pay ("SOH") under the NYLL. In addition, Plaintiffs Navarro and Mejia, only, asserted claims for discrimination and retaliation in violation of the FLSA as amended by the Families First Coronavirus Response Act ("FFCRA") and the New York City Human Rights Law ("NYCHRL"), based on Defendant's alleged discriminatory termination of their employment after they contracted the COVID-19 novel coronavirus during the spring and summer of 2020, respectively.

On January 10, 2022, the Parties, through counsel, entered a stipulation regarding service of the summons and complaint, Defendant's time to answer the complaint, and tolling the statute of limitations for putative members of the FLSA Section 216(b) collective in the case. (Dkt. No. 11). Thereafter, Defendant retained new counsel, who entered into a similar stipulation on March 7, 2022, through and including March 22, 2022. (Dkt. No. 12). The Parties then negotiated a consent stipulation to conditionally certify the FLSA Section 216(b) collective in this case, which the executed and submitted to the Court on April 11, 2022. (Dkt. No. 17).

Defendant filed its answer on April 12, 2022, (Dkt. No. 14), denying in sum and substance all of Plaintiffs' material allegations. The Court approved the Parties' Section 216(b) Stipulation on April 15, 2022, (Dkt. No. 19), and the Court convened an initial conference on April 21, 2022, during which time the Parties confirmed their agreement to attempt to settle the case after the close

of the opt-in period for the putative collective. The discovery schedule was held in abeyance to allow the Parties to supplement already-exchanged initial disclosures and work towards resolution. Dkt. No. 20.

After the initial conference, Plaintiffs, through counsel, disseminated notice of the collective action to the putative members of the collective, and four additional Plaintiffs joined the action - - Cortez, Morales, Cazarez, and Jamroga. (Dkt. Nos. 23-26). Over the course of the next several months, the Parties exchanged voluminous time and payroll records, and the Parties, through counsel, prepared their respective analyses and calculations based thereupon. Some further settlement discussions and negotiations were held, but after making little progress on their own on September 23, 2022, the Parties jointly requested a settlement conference before Your Honor. (Dkt. No. 28).

The Court conducted a telephonic settlement conference on November 17, 2022, at which all Parties appeared, and a Spanish-language interpreter was also present. At the conclusion of the conference, the Court made a mediator's proposal, which all Parties accepted and agreed to, thereby resolving the case in principle for the total amount of $100,000.00. The parties have now reduced their agreement to writing, reflecting the following terms:

## II.    Settlement Terms

The $100,000.00 settlement ("Settlement Sum") will be distributed as follows:

| Plaintiff | Net Amount Per Plaintiff |
|---|---|
| Navarro | $15,569.65 |
| Mejia | $3,409.64 |
| Rosas | $9,823.31 |
| Omar Cortez | $1,106.26 |
| Cazarez Carvajal | $12,527.83 |
| Morales Cazarez | $16,379.38 |
| Jamroga | $5,898.59 |
| Plaintiffs' Counsel | $35,285.34 for attorneys' fees and costs *(including $1,952.01 as reimbursement for litigation disbursements, and $33,333.33 (i.e., 1/3rd of the Settlement Sum) as attorneys' fees)* |

The Settlement Sum will be paid via one single lump sum within fourteen days of the Court's order approving the settlement as fair and reasonable. For the reasons described below, Plaintiffs, on behalf of all Parties, respectfully submit that this amount and allocation is fair and reasonable under the circumstances and requests that the Court approves the settlement.

III.    **The Agreement is Fair and Reasonable**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Gonzalez v. Lovin Oven Catering of Suffolk, LLC*, 2015 WL 6550560, at *2 (E.D.N.Y. Oct. 28, 2015) (applying *Wolinsky* factors on a *Cheeks* approval motion). The Parties submit that their settlement of Plaintiffs' FLSA claims is fair and reasonable based on an analysis of the *Wolinsky* factors.

A.    ***Range of Possible Recovery***

Plaintiffs worked for Defendant as warehouse clerks and, for Plaintiff Morales, as a driver's helper.[2] Plaintiffs' weekly schedules fluctuated from week to week. Defendant did track all of Plaintiffs' actual working time, which Plaintiffs do not dispute, but not all records were retained for at least one full calendar year. Plaintiffs content that in addition, various weeks throughout the relevant time period were missing from Defendant's records, which Defendant denies. Beginning in January 2020, Defendant changed its pay practices and began paying Plaintiffs one and one-half times their regular rates for all hours worked over forty. Prior to that period, Plaintiffs submit that Defendant only paid Plaintiffs at their straight-time rates of pay for all hours. The Parties dispute when, if at all, Plaintiffs were ever entitled to receive spread-of-hours pay under the NYLL, because according to Defendant, most Plaintiffs were at all times paid above the minimum wage rate, avoiding any entitlement to spread-of-hours pay.

The Parties created their own respective calculations of what they viewed as Plaintiffs' and Defendant's best- and worst-case scenarios. These calculations were hotly disputed, as the Parties'

---

[2] Plaintiff Morales concedes that he satisfies the Motor Carrier Act exemption under the FLSA, meaning that any overtime he would be owed would be limited to one and one-half the NYLL's then-applicable minimum wage rate.

disagreed over whether and to what extent any extrapolation of any potentially missing data was required, and if so, how to properly calculate those amounts. Plaintiffs calculated their estimated owed damages as follows:

*Actual Overtime Damages*: $27,315.28
*Actual Spread-of-Hours Damages*: $20,858.45
*Extrapolated Overtime plus Spread-of-Hours Damages*: $44,838.86
*Total Estimated "Actual" Damages (i.e., without liquidated damages)*: $93,012.60

A detailed summary of Plaintiffs' alleged damages is represented in the following chart:

| Plaintiffs' Alleged Best-Case FLSA and NYLL Unpaid Wage Damages | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Plaintiff** | **Actual OT Damages** | **Actual Spread of Hours Damages** | **Extrapolated Damages** | **Liquidated Damages** | **Interest** | **WTPA** | **Total** |
| Navarro | $4,841.60 | $2,508.00 | $15,028.22 | $22,377.82 | $10,552.83 | $5,000.00 | $60,308.48 |
| Mejia | $2,815.58 | $2,085.00 | n/a | $4,900.58 | $1,358.20 | $10,000.00 | $21,159.35 |
| Rosas | $4,751.43 | $2,617.00 | $6,750.34 | $14,118.78 | $7,455.29 | $10,000.00 | $45,692.85 |
| Omar Cortez | n/a | $1,590.00 | n/a | $1,590.00 | $217.00 | $10,000.00 | $13,397.00 |
| Cazarez Carvajal | $4,414.04 | $3,635.00 | $9,956.87 | $18,005.91 | $7,534.36 | $10,000.00 | $53,546.17 |
| Morales Cazarez | $5,429.21 | $5,009.00 | $13,103.43 | $23,541.63 | $9,847.82 | $10,000.00 | $66,931.09 |
| Jamroga | $5,063.43 | $3,414.45 | n/a | 8477.88 | 4023.04 | $10,000.00 | $30,978.80 |
| Totals | $27,315.28 | $20,858.45 | $44,838.86 | $93,012.60 | $40,988.55 | $65,000.00 | $292,013.74 |

In contrast, Defendant contested that Plaintiffs were entitled to any spread-of-hours damages at all, that Plaintiffs were only owed at most approximately 60% of Plaintiffs' calculation in overtime damages, and that any extrapolated damages would be *de minimis*. Based on the foregoing, a reasonable range of recovery in this matter would be between $32,778.00 based on Defendant's estimated calculation (including liquidated damages), and at most $292,013.74 if Plaintiffs proved all damages and all claims.

Under this proposed settlement, after deducting for attorneys' fees and costs, Plaintiffs will receive a total net amount of $64,714.66. This represents approximately 23% of their maximum FLSA and NYLL damages under Plaintiffs' theory of the case, and 197% of Plaintiffs' best recovery under Defendant's theory of the case - - both of which are under the NYLL's full six-year statute of limitations period. The outcome here is therefore a highly reasonable one under the FLSA. *See, e.g., Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018)

(finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

**B.    _Avoiding Burdens and Potential Risks of Continued Litigation_**

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, this matter was in its infancy, with all formal discovery about to begin. Without question, disputed issues of material fact would arise concerning Plaintiffs' hours worked. Though a fairly straightforward case, discovery in any FLSA matter can prove expensive, and the risks would only increase as more time, effort, and resources were poured into the action. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc*., 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015).  With litigation risks expected to immediately rise for all Parties, the Settlement Sum is especially fair and reasonable.

**C.    _Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments_**

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations took place over several months, including prior to Plaintiffs filing this action, and concluded only after extensive negotiations and after the Parties appeared before Your Honor for a settlement conference and accepted the Court's mediator's proposal. The assistance of an experienced mediator reinforces that a settlement agreement is non-collusive. *E.g., Hernandez v. Anjost Corp.*, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process."); *Capsolas v. Pasta Res. Inc.*, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) (same). There was no fraud or collusion here.

Regarding the release, of course, in evaluating a settlement, courts generally do not permit releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F.3d at 206). However, this general rule is tempered where - - as here - - a plaintiff brings claims other than wage and hour claims. *E.g., Acosta v. Prudent Mgmt., LLC*, 2012 WL 391332, at *3-4 (S.D.N.Y. Feb. 4, 2021). Here, the release in the Parties' Agreement is limited to wage and hour claims for each of the Plaintiffs, and for Plaintiffs Navarro and Mejia - - both of whom bring retaliation claims under both the CHRL the FFCRA - - their release is broader to include all employment-related claims. This fully supports the fairness of the release and enabling the Parties to put all of their disputes behind them. *E.g., Gonzalez v. Victoria G's Pizzeria LLC*, 2021 WL 8316282, at *3 (E.D.N.Y. Nov. 12, 2021)

(collecting cases and approving of release that included retaliation claims while noting release, though broader than standard FLSA releases, "sufficiently narrow in scope" to warrant approval).

Likewise, the Agreement does not contain a confidentiality clause which would "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood v. Carlson Rests., Inc.*, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177-78 (S.D.N.Y. Mar. 30, 2015). While the agreement does contain a non-disparagement clause, it contains a *Cheeks*-appropriate carve-out permitting the parties to make truthful statements about their allegations and their experience litigating this action, which courts routinely approve. *Torres v. Mc Gowan Builders*, 2020 WL 5369056, at *3 (E.D.N.Y. Sept. 8, 2020) (citing *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015)) ("Plaintiff is permitted to make truthful statements about the litigation and settlement of his FLSA claims regardless of whether he has been subpoenaed or compelled to do so.").

### D. <u>The Requested Attorneys' Fees are Reasonable</u>

In addition to assessing the reasonableness of the settlement amount, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $33,333.33, which amounts to exactly 1/3 of the total gross Settlement Sum. This is consistent with what courts in this Circuit routinely approve, thereby demonstrating its reasonableness. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of Plaintiff and their attorneys more fully'"); *see also Kornell v. Haverhill Ret. Sys.*, 790 Fed. App'x 296, 298 (2d Cir. 2019) (approving attorneys' fees award of one-third the gross settlement sum - - not one-third the net settlement sum after deduction of attorneys' fees - - and finding that trial court decision to grant same was permissible as long as "its award of attorneys' fees is reasonable."); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Moreover, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). To calculate the lodestar cross-check, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Between the time that Plaintiffs first retained counsel and December 28, 2022 while finalizing this motion, Plaintiffs' counsel has billed a reasonably appropriate 81.1 hours on this file, for a total lodestar fee of $20,640.00, if calculated pursuant to the lodestar, amounting to a modest 1.6 multiplier.[3] This is well within the range of reasonableness that courts routinely approve. *E.g. Suarez v. Rosa Mexicano Brands Inc.*, 2018 WL 1801319, at \*1-\*2 (S.D.N.Y. Apr. 13, 2018) (awarding 33.33% attorneys' fee of $1,200,000.00 in a $3,600,00.00 settlement, amounting to a 4.62 multiplier, in a claims-made, reversionary settlement for restaurant workers); *Bravo v. Palm West Corp.*, No. 14-cv-9193, Dkt. 62 (S.D.N.Y. Mar. 11, 2016) (awarding $500,000.00 fee, representing 3.5 multiplier in FLSA / NYLL class action); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at \*18 (S.D.N.Y. Sept. 9, 2015) (awarding multiplier of 4.87); *Capsolas v. Pasta Res., Inc.*, 2012 WL 4760910, at \*9 (S.D.N.Y. Oct. 5, 2012) (awarding multiplier of 3.96). This figure is based on hourly rates of: $450.00 per hour for Jon L. Norinsberg, Esq., Plaintiff's counsel's firm's managing partner who supervised all work in this case; $350.00 per hour for Michael R. Minkoff, Esq., undersigned counsel and partner on this matter; $275.00 per hour for Diego O. Barros, Esq., Senior Counsel who handled this matter prior to its filing; and $100.00 per hour for paralegals. Courts routinely approve these rates in similar cases. *See, e.g., Carvajal v. Bestcare, Inc.,* Dkt. No. 2:20-cv-01791-JS-ST, ECF # 38 (E.D.N.Y. Feb. 10, 2022) (approving *Cheeks* motion and specifically approving same rates as those requested here by undersigned counsel); *Quinones v. UMVLT, LLC*, Dkt. No. 1:21-cv-00184-JLC, ECF # 29 (S.D.N.Y. July 26, 2021) (in single-plaintiff FLSA matter wherein undersigned counsel was lead attorney, expressly noting allocation of attorneys' fees based on rates comparable to those sought here was "fair and reasonable under the totality of circumstances"); *Delyons v. KA Investigations-Security, LLC*, Dkt. No. 1:20-cv-01763-LB, ECF # 35 (E.D.N.Y. May 20, 2021) (Bloom, *M.J.*) (in matter handled by undersigned counsel as lead attorney, evaluating fairness of FLSA settlement under *Cheeks* and specifically approving fee award based on rates comparable to

---

[3] It is settled that pre-litigation work is compensable time because "some of the services performed before a lawsuit is formally commenced are performed 'on the litigation' . . . [when such charged time] falls under the category of developing a theory of the case." *See, e.g., Alvarez v. Haywood*, 2011 WL 13130851, at \*8 (N.D.N.Y. Aug. 29, 2011) (quoting *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985)) (awarding attorneys' fees for pre-litigation work spent "drafting memoranda regarding whether Plaintiff's counsel's firm should take Plaintiff's case, and [ ] for Plaintiff's counsel's assistance during Plaintiff's labor arbitration."). Here, Plaintiffs, through counsel, submitted to Defendants a pre-suit demand letter, a damages calculation, an initial draft of the eventually-filed Complaint, and conducted extensive settlement negotiations before filing this action.

those requested here); *Abraham v. Promise Home Care, Inc.*, Dkt. No. 1:18-cv-04502-GWG, ECF # 134 (S.D.N.Y. Dec. 1, 2020) (in FLSA/NYLL class action handled by undersigned counsel as lead attorney, approving fees award at 2.37 times lodestar multiplier based on hourly rates comparable to those requested herein); *Patterson v. Premier Construction Co. Inc.*, Dkt. No.: 15-cv-00662-ST (S.D.N.Y. 2017); *Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012); *Marshall v. City of New York, et al.*, 10-cv-2714 (JBW) (VVP) (E.D.N.Y. 2012). *See also Tokareva v. Sec. Serv. Provider Corp.*, 2021 WL 1093877, at *2 (S.D.N.Y. Feb. 16, 2021) (noting hourly rates between $250 and $450 is "appropriate for experienced litigators in wage-and-hour cases" and noting hourly rates between $100 and $150 for paralegal work "found to be reasonable"). Plaintiffs' counsel's contemporaneous billing records are attached hereto as **Exhibit B**.

Finally, Plaintiffs' counsel seeks reimbursement for its out-of-pocket litigation expenses in the amount of $1,952.01. This includes expenses for mailing, document translation for the FLSA § 216(b) notice in this case, the Court's filing fees, legal research and investigation, and fees for Spanish-language interpreter services for the settlement conference, per this Court's order for same. A log of these expenses, including all available receipts, is attached hereto as **Exhibit C**.

Accordingly, Plaintiff's counsel's request for a total of $35,285.34 is reasonable.

## IV.    **Conclusion**

For the forgoing reasons, Plaintiffs, on behalf of the Parties, respectfully request that the Court approve the settlement of Plaintiffs' Claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, and that the Court retain jurisdiction to enforce the terms of the Parties' Agreement. The Parties have attached hereto as **Exhibit D** a proposed order of dismissal for the Court's convenience.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Michael R. Minkoff, Esq.

Copies to:    Counsel for Defendants (via ECF)